## No. 8833.
### Orleans Appeal.

## THOMSON MACHINERY CO. v. WILLIAM HALEY.

(February 2, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Sales—Par. 124, 128, 153.**

A contract for the cash purchase of machinery, subject to inspection and trial before acceptance, cannot be repudiated by the buyer months after trial and written acceptance by the buyer's authorized agent. Buyer's subsequent offer to give seller his note for the purchase price is conclusive evidence of acceptance of machinery and he cannot thereafter plead vices or defects in avoidance of the contract.

Appeal from the Civil District Court for the Parish of Orleans, Division "B", Hon. Fred. D. King, Judge.

This action is for the price of merchandise sold and delivered.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

L. R. Hoover, attorney for plaintiff and appellee.

Sol. Weiss, attorney for defendant and appellant.

BELL, J. This is a suit for the price of a tractor and cultivating plow sold and delivered to the defendant. There was judgment for plaintiff and defendant has appealed. The tractor and plow is referred to in the pleadings and evidence as the "outfit". The contract was a verbal one, and the price of the "outfit" was $1,650.00, terms cash. There is an additional claim for a certain part of machinery sold under a previous contract and valued at $3.85, and for prepaid express charges on this part, in the sum of 98¢. The total judgment for these several items was $1,654.83.

Defendant answers by admitting the purchase and delivery of the "outfit", consisting of tractor and plow, and it has been admitted at the trial of the case that the other items, totalling $4.83, are due. The contract price of the "outfit" is also admitted to be the sum of $1,650.00. Defendant avers, however, as a special defense, that the "outfit" was not the kind and character which he agreed to purchase, and that both the tractor and plow entirely failed to do the work guaranteed and for which it was purchased. It is further averred that the tractor was to have been equipped with a chassis, but that plaintiff failed to comply with this and all other parts of the agreement or guarantee. It is finally denied by defendant that he agreed to purchase the "outfit" for cash, but that the terms of sale were that payment should be made after the crop season of 1921.

The contract was a verbal one, and it appears from the evidence that the negotiations leading up to the purchase of the "outfit" were consummated in the latter part of January, 1921, and that shipment was made to defendant on January 28, 1921, to Bayou Sale, La., a station near defendant's plantation. It further appears that the agreement to purchase this machinery was made by the defendant, and that prior to the sale that demonstrations of the tractor and the entire "outfit" was made at the experimental station in New Orleans, in the presence of defendant's two sons, who are shown beyond doubt to have been his authorized agents, residing on and managing defendant's plantation. We find that the "outfit" arrived in the early part of February, at the place above stated, and that representatives of the plaintiff called at the railway station with defendant's sons, who examined the machinery, and at that examination complained that the tractor had no chassis. Plaintiff's agent thereupon stated to defendant's sons that there had never been any contract for the furnishing of the tractor with a chassis, and that if this was a serious objection, he would like to have them state so before removing the machinery from the railway station, as he had many other purchasers and could make the shipment at once for other accounts. Notwithstanding this request of plaintiff's agent, defendant's sons paid freight on the "outfit" and removed it from the railway station. Thereafter, an additional demonstration of the operation of this tractor was made in the early part of the month of April, at defendant's plantation, by plaintiff's agent, in the presence of one of defendant's sons and his overseer. This demonstration continued during two days, and immediately thereafter, defendant's son, Will Haley, Jr., was handed an invoice covering this machinery, bearing date January 31, 1921, and also bearing the word "Cash" under the printed word "Terms", with a description of the property purchased as "One Kardell Tractor; One Cultivating Plow, price $1,650.00". Plaintiff's agent requested defendant's son

to certify on this document as to his acceptance and approval of the machinery. The certificate of approval appearing thereon and signed by Will Haley, Jr., reads as follows:

"Mr. Gilkinson has been here and proven to myself and overseer that the above outfit will do all classes of work in cultivation.

"(Signed)   Will Haley, Jr."

There is no doubt that some minor part of the plow, described in the evidence as the "foot", was damaged at the aforementioned demonstration, but this defect was immediately rectified by plaintiff's agent, and heavier and stronger parts were replaced.

We are satisfied that the sale of the "outfit" was made subject to inspection, trial and approval by the defendant or his agents, and that this inspection and trial was freely given and full and fair demonstration made of the machinery. Considering this understanding, it must be held as a proposition of law that the sale was not consummated until defendant's acceptance and approval of the machinery. Art. 2640 of the Civil Code provides:

"Things, of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold, until the buyer be satisfied with the trial, which is a kind of suspensive condition of the sale."

Though the terms of the sale were for cash, the price was not, however, due by defendant until after the written approval above noted, that is, until after April 5, 1921. The evidence shows that subsequent to this date, plaintiff made frequent attempts to collect the amount due for the machinery, and that from that date until June 4, 1921, no complaint whatsoever was made to the plaintiff in regard to the operation of the machine or its inability to perform the work for which it was purchased. It appears that sometime prior to May 30, 1921, the front right wheel of the tractor, while being operated by the defendant or his agents at the plantation, was broken while the tractor was being driven over a quarter drain in the field. The plaintiff, however, immediately furnished a new wheel free of charge, and on May 30, 1920, the other son of defendant wrote to plaintiff the following letter:

"This is to state Mr. S. Kelly, Mech. for Thomson Machinery, has this day, May 30, 1921, repaired the front right wheel of Kardell tractor, by replacing wheel, and this puts the tractor in repair.

"(Signed)   Don M. Haley."

Defendant does not charge in his answer any specific defects in the "outfit" furnished, but at the trial of the suit, evidence has been offered to prove defects as to the carburetor and magneto. None of these defects were registered, however, until this suit was instituted, and the only complaint found in the correspondence arising subsequent to plaintiff's demand for the price of the "outfit" is to the effect that the tractor was not mechanically strong, and that defendant desired, above all things, that the tractor should be equipped with a chassis. It was finally noted in defendant's correspondence, made on his account by his sons, that the payment for the "outfit" was not to have been made until the end of the crop season of 1921. We are forced to conclude that the objections noted are not well founded and formed no grounds for the repudiation of the contract, the "outfit" having been accepted after plaintiff's agent distinctly informed defendant's sons that the chassis was not to have been and would not be furnished, and the invoice itself distinctly showing that the terms of the sale were for cash. There is abundance of evidence in the record showing the use of the plow and tractor between April 5th, the day the same was formally accepted, and May 30th, when the new wheel was furnished for the tractor. We find that the defendant him-

self did not inspect the machinery nor attempt to advise himself as to its satisfactory operation, until demands were made upon him for payment of the "outfit", and that he, defendant, in the month of May or June, went to the plantation and had the tractor and plow operated in his presence. We are convinced, if his testimony on this point be taken as true, that this tardy and belated examination made by defendant in person was for the purpose of formulating excuses to delay the payment of the price long due. We quote, in part, from his testimony:

"Q. Do you remember getting letters from the Thomson Machinery Company in regard to payment for this tractor?

"A. Yes, sir.

"Q. Did you ever write the Thomson Machinery Company that the tractor was not satisfactory?

"A. I don't know that I wrote to him that it was not satisfactory.

"Q. Did you agree to give Mr. Thomson a note?

"A. Yes, sir.

"Q. Did you call his attention to the fact that this tractor was not satisfactory?

"A. No, I offered to give him no note after I found out it was unsatisfactory.

"Q. When did you find that out?

"A. In May or June."

The president of the plaintiff company testifies that he had several business engagements with the defendant in regard to the settlement of the claim, and that after two or three months of promises made by defendant for the payment of the machinery, defendant finally offered plaintiff his six months' note, but that this witness, on behalf of plaintiff, declined to accept anything but cash. There can be no doubt that defendant offered a note, the only difference in the testimony of these two witnesses is as to whether the note would be for six months or a year. This fact is also conclusive that defendant gave full, though belated, approval, to the operation and efficiency of the machinery. The offer to pay defendant by note is bound to have been made after May 30, 1921, when the final certificate of approval, already noted, was given by the son, Don Haley.

Under all the circumstances of this case, we find no legal ground for defendant's repudiation of the contract. The conduct of defendant and his agents and their written documents found in the record, estop defendant from pleading any defects in the machinery, which would relieve him of his obligation to accept and to pay for the machinery sold.

In Champion Shoe Machine Co. vs. Antonio Culmone, 8795 Orl. App., this court has recently held:

"When a purchaser of machinery has used it for more than a year before offering to return it to the seller, and has paid several of the notes furnished by him for the purchase price, with full knowledge of the defects of the machinery, he must be held to have accepted the machinery, and is, therefore, bound to pay for it."

The same ruling was made in Templeman vs. Fairbanks, 129 La. 983, 57 South. 309, where the court said:

"It is an undisputed fact that the plaintiff used the machinery for more than a year before offering to return it to the defendant. It is an undisputed fact that plaintiff paid several notes, given for installment of the purchase price, with full knowledge of many of the defects complained of in his petition. Plaintiff, therefore, must be held to have accepted the machinery."

In the instant case, while no notes were given or paid—though one was offered in settlement of the purchase price—the written certificate of approval furnished by defendant, through his agent, Will Haley, Jr., as already quoted, and the failure on the part of the defendant to successfully prove any specific or serious defects in the machinery sold or in its operation, bars recovery. (35 Cyc., *Verbo:* "Sales", page 90, par. H, *et se.)*